IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NANCY L. LORSUNG, ) | |
| ) | 4:10CV3213 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | MEMORANDUM AND ORDER |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court pursuant to plaintiff's appeal of an adverse decision by the Social Security Administration. The plaintiff, Nancy L. Lorsung, brings this action to review the final decision of the Commissioner of the Social Security Administration denying plaintiff disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Filing No. 1, Complaint. The court has jurisdiction to review this matter under 42 U.S.C. § 405(g). *Id.*

Plaintiff initially filed an application for Title II benefits on or about July 7, 2005. Filing No. 1; Filing No. 14, Social Security Transcript ("Tr.") at 68-70. An Administrative Law Judge ("ALJ") heard the matter and denied the plaintiff's claim, finding the plaintiff not disabled under sections 216(I) and 223(d) of the Social Security Act. *Id.* at 234-243. Plaintiff filed a request for review of the ALJ decision with the Appeals Council, and the Council remanded the plaintiff's case back to an ALJ for resolution. *Id.* at 247-251. During a second hearing, the same ALJ again found the plaintiff not disabled under sections 216(I) and 223(d) of the Social Security Act. *Id.* at 13-22. A final request for review by the Appeals Council was denied on August 27, 2010. *Id.* at 8-11.

## BACKGROUND

Plaintiff was born on February 13, 1962, and she was 46 years old at the time of her initial hearing with the ALJ on June 11, 2008.  *Id.* at 68 & 320.  Plaintiff attained the educational level of high school graduate.  *Id.* at 320.  Plaintiff worked at Principal Financial as her primary employer beginning in March of 1990, working as a claim and data processor.  *Id.* at 321.  Prior to working as a claim and data processor, Skagway Department Store employed plaintiff as a supervisor.  *Id.* at 322.  Plaintiff last worked for pay in 2006, where she worked the front window at Skate Island.  *Id.* at 321-2.

Plaintiff contends she suffers from allergies, immunodeficiency, diabetes, and wrist pain.  In particular, she alleges she developed severe allergies and sensitivity to flowers and perfume.  Her immunodeficiency requires that she avoid large groups of people to limit her exposure to potential illnesses. Following unsuccessful treatments for her immunodeficiency, plaintiff developed severe pain in her wrists and hands, leaving her unable to do computer work for more than short periods of time.

Plaintiff's alleged onset date is October 2004.  *Id.* at 323.  In October 2004, plaintiff left Principal due to individuals spraying and having fun with perfume.  *Id.* at 324.  Due to plaintiff's reaction to perfumes at her job, her primary physician, Dr. Richard Fruehling, found plaintiff had increasing problems with wheezing and coughing.  *Id.* at 189.  Plaintiff also developed asthmatic bronchitis due to the odors at Principal.  *Id.* at 342.  Dr. Michael Sullivan advised plaintiff in November 2004 that it was medically necessary to avoid exposure to perfume and flowers.  *Id.* at 138.  In addition to plaintiff's respiratory problems, plaintiff's medical history includes ganglion cysts in both her wrists and forearms, which

required removal by surgery. *Id.* at 216. Her job at Principal required her to toggle between screens as often as 120 times in two minutes. *Id.* at 343. She attempted to work from home, following the onset of her symptoms; however, she only worked from home for about two weeks. *Id.* at 321. Plaintiff's attempt to work at home was unsuccessful, because (1) her wrists could not handle the repetitive motion required by her work, and (2) HIPAA law concerns when she worked at home. *Id.* at 343-4.

In January of 2005, plaintiff saw Dr. Roger Kobayashi, who found she has an immunodeficiency disorder. *Id.* at 1489. Plaintiff tried receiving IVIG infusions, or intravenous immunoglobulin infusions, to treat the immunodeficiency disease; however, she reacted poorly and could no longer receive the infusions. *Id.* at 326. As a result of the infusions, plaintiff experienced vasculitis or inflammation throughout her veins in her arms, wrists, and even the bottoms of her feet. *Id.* at 326-7. Even after stopping the infusions, the swelling and pain did not completely go away. *Id.* at 327. Plaintiff inquired into other treatments for her condition, and her doctor informed her there are no other treatments aside from the infusions. *Id.* at 347. By May and June of 2005, Dr. Fruehling, her primary physician, restricted her from working outside the home due to fatigue and extremity pain. *Id.* at 138.

Plaintiff testified that she cannot be near large groups of people because she can easily become sick due to her immunodeficiency disease. *Id.* at 325. Plaintiff also testified regarding her allergies to perfume and flowers, which can trigger her asthma very easily. *Id.* at 324. In fact, her asthma can be triggered by someone's hair spray, deodorants or even shampoos. *Id.* Plaintiff is unable to shop in the soap aisles at the grocery store, and her daughter has to handle that type of shopping. *Id.* at 325. Plaintiff visits the store at

off-peak times to avoid her exposure to others. *Id.* at 330. Plaintiff additionally testified that she has to use unscented items around the house, and her daughter handles the cleaning due to the scents of cleaning products. *Id.* at 325.

Plaintiff is also allergic to soy and red dye, which causes her to have inflammation. *Id.* Plaintiff experiences significant tiredness and fatigue, having to take lots of rests and breaks while doing any sort of work around the home. *Id.* at 326. In addition, plaintiff left her daughter's graduation ceremony before it was over due to the perfume on those in attendance. *Id.* at 330. She also testified she has arthritis in her hands and hips, with swelling in her hands from the arthritis. *Id.* at 328. Plaintiff testified she has pain in her hands when typing on a keyboard, and she can only type for a few minutes at a time. *Id.* at 347.

Plaintiff stated she could only be on her feet for two or three hours, but she would be strained and took breaks. *Id.* at 328. In an eight-hour work day, she could stand one to two hours total but not at one time. *Id.* at 356. She stated that in an eight-hour work day, she could sit maybe half of that time but not all at once. *Id.* at 328. Plaintiff is not confined to her home, and she drives her vehicle around town to take her daughter to school, pick up groceries, and visit her disabled parents. *Id.* at 352.

Plaintiff applied for disability benefits on July 7, 2005. *Id.* at 68. On August 23, 2005, Dr. Donald Larson conducted a Residual Functional Capacity Assessment. *Id.* at 163. Dr. Larson found the plaintiff had medically determinable severe impairments of Asthma, Immunodeficiency and Diabetes, but they did not meet or equal listing. *Id.* at 164. Dr. Larson also stated her credibility was difficult to assess due to her failure to submit an

Activities of Daily Living ("ADL") form. *Id.* Overall, Dr. Larson determined the plaintiff was capable of work within the limitations noted. *Id.* As a result, on August 24, 2005, the Social Security Administration disapproved plaintiff's claim finding her not disabled or qualified for disability benefits. *Id.* at 33-36.

Mr. Glen Murray became plaintiff's representative on September 22, 2005. *Id.* at 49-50. Plaintiff filed a Request for Reconsideration on September 23, 2005. *Id.* at 37-38. In a Functional Capacity Assessment completed in September of 2005, the evaluator found plaintiff could not continue to lift items due to pulling in her wrists, and plaintiff could not complete the assessment due to a reaction secondary to laundry products in the facility. *Id.* at 175. Plaintiff passed through the same area earlier without a reaction. *Id.* Plaintiff declined to reschedule. *Id.* In addition, Dr. Fruehling noted in November of 2005 that plaintiff experienced ongoing problems with apparent vasculitis of upper extremities from the IVIG. *Id.* at 209.

Plaintiff saw an allergy asthma doctor, Dr. Ted Segura, in December of 2005, to receive an independent opinion on her condition for her disability claim. *Id.* at 213. Dr. Segura stated that after careful consideration of all the evidence, he strongly supported the plaintiff's disability claim beginning after her last IVIG treatment in May 2005 through an indefinite period of time. *Id.* at 216. Dr. Segura found that she worked through her numerous medical problems up until 2004, at which point her health likely began to deteriorate significantly and fatigue and immunodeficiency began to impact her health. *Id.* He found her disability is likely to be permanent, and he found no reason to doubt that the pain in her wrists and hands is due to the IVIG and pervious surgeries. *Id.* at 217. As a result, he opined that the plaintiff is disabled due to the medical problems she has, and

found the date of May 19, 2005, as a reasonable date of disability, since it coincides with the start of the severe wrist and hand pain.  *Id.* at 218.

Also in December of 2005, plaintiff completed an additional Residual Physical Functional Capacity Assessment, which reaffirmed the assessment performed in August of 2005.  *Id.* at 202-3.  Her primary physician, Dr. Fruehling, agreed with the evaluation of Dr. Segura dated December 15, 2005, that plaintiff was and is disabled.  *Id.* at 207.  Plaintiff requested a hearing before an ALJ in January of 2006.  *Id.* at 44-45.  Plaintiff received notice she would have a hearing in May of 2008.  *Id.* at 52-57.

Dr. Fruehling completed a Medical Source Statement on June 3, 2008, in which he stated plaintiff is unable to work at all due to severe allergies to flowers and perfume and her low immune system.  *Id.* at 230-3.  He stated plaintiff must avoid exposure to all environmental restrictions except cigarette smoke, and she must not engage in repetitive motions due to the previous wrist procedures and the arm pain after her IVIG treatments.  *Id.* at 232.  Dr. Fruehling wrote that her prognosis is poor and he doubts symptoms will improve in the future.  *Id.* at 233.  The symptoms remain under reasonable control with the limited exposure to perfume and flowers and avoiding large groups of people.  *Id.*

The first hearing on plaintiff's claim for disability insurance benefits occurred on June 11, 2008.  *Id.* at 317.  At this hearing, a vocational expert testified, answering hypothetical questions posed by the ALJ.  *Id.* at 332-6.  The vocational expert testified that plaintiff could possibly perform sedentary jobs that would involve working alone, such as a telephone solicitor.  *Id.* at 334.  In the second hypothetical question, the ALJ gave the vocational expert the same hypothetical with specific facts that apply to the plaintiff's case.

*Id.* at 335-6.  The ALJ told the vocational expert that the hypothetical person has to avoid exposure to large groups and perfumes or other strong scents, and the person would require a rest break of one to two hours each day. *Id.*  Based on these limitations, the vocational expert determined that the individual could not perform the plaintiff's past job or any other jobs in the national economy.  *Id.* at 336.

Plaintiff received an unfavorable decision on June 21, 2008, because the ALJ found the plaintiff not disabled under the Social Security Act Sections 216(i) and 223(d).  *Id.* at 234-243. Plaintiff requested review of the hearing decision in July of 2008.  *Id.* at 252. Plaintiff's attorney's brief requesting review argued that the residual functional capacity finding of the ALJ would not allow for performance of full-time work; that the ALJ erred in the determination that the plaintiff could perform past relevant work and other work in the economy; that the ALJ erred in according little weight to the treating physician, Dr. Fruehling; and that the ALJ failed to properly evaluate the plaintiff's credibility.  *Id.* at 267.

In August of 2009, the Appeals Council remanded the case to the ALJ, granting plaintiff's request for review. *Id.* at 247-251.  The Appeals Council remanded for resolution of several issues. *Id.* at 249.  The Council instructed the ALJ to give further consideration to the maximum residual functional capacity of the plaintiff during the period at issue, including evaluating the opinion of the treating source and the weight given to that opinion evidence. *Id.* at 250.  Second, as necessary, the Council instructed the ALJ to obtain medical expert evidence to clarify the severity and nature of plaintiff's impairment.  *Id.* Finally, they instructed the ALJ to obtain additional evidence from the vocational expert to determine limitations on the plaintiff's occupational base, including presenting hypothetical questions that reflect the limitations in the record as a whole.  *Id.*

In October 20, 2009, the second hearing took place before an ALJ. *Id.* at 16. In this hearing, the vocational expert testified the hypothetical individual could work so long as fresh, clean and healthy air are in the environment. *Id.* at 359. The hypothetical made no mention of perfume or flowers. In the second hypothetical, the hypothetical individual had the same limitations and ailments as the plaintiff, except for asthma, and the vocational expert stated that such a person could not perform the plaintiff's past work or any other job in the national economy. *Id.* at 360. The vocational expert stated that due to the limitations on repetitive reaching, handling or fingering, he would close the world of work to such an individual. *Id.* at 361-2.

On December 10, 2009, the ALJ again denied plaintiff's claim for disability. *Id.* at 13-22. Plaintiff subsequently filed another request for review of the hearing decision. *Id.* at 310. Plaintiff argued that the ALJ failed to comply with the remand order by failing to properly evaluate the treating source's statement/opinion, the ALJ erred in giving "little weight" to Dr. Fruehling's opinion, there was no substantial evidence that supported the ALJ's finding that the claimant could perform her past work, and the ALJ failed to evaluate her credibility properly. *Id.* at 310-1. In August of 2010, the Appeals Council denied review of the plaintiff's case and stated that the decision of the ALJ was final. *Id.* at 8.

Plaintiff commenced this action on October 29, 2010, stating that the conclusions and findings of fact of the SSA are "not supported by substantial evidence and are contrary to law and regulation." Filing No. 1, Complaint. Plaintiff claims that the ALJ committed an "error of law by failing to find that Plaintiff's adverse inflammatory reaction to her IVIG infusion was a severe impairment under the Social Security regulations and rulings." Filing No. 20, Plaintiff's Brief in Support of Summary Judgment. Additionally, plaintiff claims the

8

ALJ "committed an error of law by relying on an improper hypothetical question when examining the Vocational Expert." *Id.*

## LEGAL STANDARD

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant is disabled when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in [significant numbers in] the national economy . . . either in the region in which such individual lives or in several regions of the country." 42 U.S.C. § 432(d)(2)(A).

An ALJ evaluates a disability claim according to a five-step sequential analysis prescribed by Social Security regulations. The ALJ examines

> any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience. *See* 20 C.F.R. § 404.1520(a); *Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984). If a claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience. *See Braswell*, 733 F.2d at 533. If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and second, that other such work exists in substantial numbers in the national economy. *See Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). A claimant's residual functional capacity is a medical question. *See id.* at 858.

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).

When reviewing the decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court will affirm the Commissioner's decision to deny benefits, if it is supported by substantial evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996). Under this standard, substantial evidence means something "less than a preponderance" of the evidence, *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998), but "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Ellison v. Sullivan*, 921 F.2d 816, 818 (8th Cir. 1990). "Substantial evidence is that which a reasonable mind would find as adequate to support the ALJ's decision." *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996) (citing *Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996)).

In determining whether the evidence in the record as a whole is substantial, the court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999) (citation omitted). If the court finds that the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision because the record also contains substantial evidence that supports a different outcome or because the court would have decided the case differently. *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001).

It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits. *Sims v. Apfel,* 530 U.S. 103, 111 (2000) (noting that "Social Security proceedings are inquisitorial rather than adversarial.").

When assessing the credibility of a claimant's subjective allegations, the ALJ must consider the claimant's prior work history, daily activities, duration, frequency and intensity of pain, dosage, effectiveness and side effects of medication, precipitating and aggravating factors, and functional restrictions. *Tate v. Apfel,* 167 F.3d 1191, 1196 (8th Cir. 1999) (applying analysis mandated by *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984)). "An ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole." *Jackson v. Apfel,* 162 F.3d 533, 538 (8th Cir. 1998) (quoting *Porch v. Chater,* 115 F.3d 567, 572 (8th Cir. 1997)). A claimant may have disabling pain and still be able to perform some daily home activities. *Burress v. Apfel,* 141 F.3d 875, 881 (8th Cir. 1998) (the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work."). Also, a treating physician's opinion does not automatically control, but will be given controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Reed v. Barnhart,* 399 F.3d 917, 920 (8th Cir. 2005).

Social Security Ruling 96-7p provides that a "strong indication" of the credibility of a claimant's statements is the consistency of the claimant's various statements and the consistency between the statements and the other evidence in the record. Ruling 96-7p provides that the ALJ must consider such factors as:

- The degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment.

- The consistency of the individual's own statements. The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances, when such

11

information is in the case record. Especially important are statements made to treating or examining medical sources and to the "other sources" defined in 20 C.F.R. 404.1513(e). . . . However, the lack of consistency between an individual's statements and other statements that he or she has made at other times does not necessarily mean that the individual's statements are not credible. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms. Therefore, the adjudicator will need to review the case record to determine whether there are any explanations for any variations in the individual's statements about symptoms and their effects.

- The consistency of the individual's statements with other information in the case record, including reports and observations by other persons concerning the individual's daily activities, behavior, and efforts to work. This includes any observations recorded by SSA employees in interviews and observations recorded by the adjudicator in administrative proceedings.

Soc. Sec. Rul. 96-7p, 1996 WL 374186 (S.S.A.) at *5 (July 2, 1996).

Residual functional capacity ("RFC") is defined as the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, i.e., eight hours a day, five days a week, or an equivalent work schedule. Soc. Sec. Rul. 96-8p. RFC is what an individual can still do despite his impairments and the resulting limitations. *Id.* at 2. While the issue of an individual's RFC is a medical question, *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir. 2000), RFC is not based solely on "medical" evidence. *See McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000) (holding that the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including medical records, observations of treating physicians and others, and an individual's own description of the limitations). In determining residual functional capacity, a hypothetical question posed to a vocational expert must precisely set out all the claimant's impairments that are supported by the evidence. *Pickney v. Chater,* 96 F.3d 294, 297 (8th Cir. 1996). Furthermore, a hypothetical question posed to a vocational

expert must capture the concrete consequences of claimant's deficiencies. *Id.* Testimony elicited by hypothetical questions that do not relate with precision all of claimant's impairments cannot constitute substantial evidence to support the Secretary's decision. *Id.*

## DISCUSSION

### A. Treating Physician

Error exists when an ALJ fails to consider or discuss a treating physician's opinion that a claimant is disabled when the record contains no contradictory medical opinion. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). "[A] treating physician's opinion regarding an applicant's impairment will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Prosch v. Apfel*, 201 F.3d 1010, 1012-1013 (8th Cir. 2000) (*quoting* 20 C.F.R. § 404.1527(d)(2) (2006)). The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hogan v. Apfel*, 239 F.3d at 961. An ALJ cannot substitute his opinion for the medical opinions. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990).

Plaintiff's treating physician, Dr. Richard Fruehling, stated on October 11, 2004, that plaintiff had increasing problems with wheezing and coughing due to reactions to coworkers perfumes. Filing No. 14, Tr*.* at 189. At that time, Dr. Fruehling indicated the plaintiff should not work for several weeks. *Id.* By June 29, 2005, Dr. Fruehling restricted plaintiff from working outside the home completely. *Id.* at 138. On June 3, 2008, Dr.

Richard Fruehling completed the Medical Source Statement for the plaintiff. *Id.* at 230. In completing this form, Dr. Fruehling wrote he treated plaintiff for "diabetes, immunodeficiency with multiple allergies, possible vasculitis after reaction to IV IVIG treatment, and irritable bowel syndrome." *Id.* Dr. Fruehling further wrote that the plaintiff is "unable to work at all due to severe allergies to flowers, perfume, and a 'low immune system.'" *Id.* at 231. Dr. Fruehling indicated that plaintiff must engage in "no repetitive motions after previous ganglion cyst procedures and persistent arm pain following IVIG treatment," thus placing significant limitations on her ability to do repetitive work. *Id.* at 233. Dr. Fruehling concluded by stating that plaintiff's prognosis is "poor," and he doubts plaintiff's symptoms will improve. *Id.* Since the treating physician's opinion is to receive 'controlling weight' in evaluating the plaintiff's impairment, these statements by Dr. Fruehling should receive great weight, as they are well-supported by medically accepted diagnostic techniques and evidence in the record. In addition, Dr. Fruehling's findings do not conflict with other substantial evidence in plaintiff's records. Not only do the medical findings of plaintiff's other doctors in the record not conflict with Dr. Fruehling's findings, but they reinforce and concur in his diagnoses. For example, Dr. Segura, who Principal hired to complete an independent diagnosis, stated that his assessment of the plaintiff lent "strong support to her claim of disability beginning after the last dose of IVIG in May of this year and continuing indefinitely." *Id.* at 139. Dr. Segura found that plaintiff had worked through many problems over the years, however her health obviously deteriorated when the immunodeficiency began to greatly impact her health status. *Id.* Dr. Segura concluded by stating that plaintiff's disability "as a result of her health problems is likely to be permanent at this point." *Id.*

The ALJ clearly failed to consider the treating physician's opinion in totality that plaintiff is disabled, especially considering the record did not contain any significant contradictory medical opinions and generally only contained concurring opinions. Dr. Fruehling's findings should receive controlling weight in this case and provide clear evidence that plaintiff is disabled.

### B. Vocational Expert

To assist an ALJ making a disability determination, a vocational expert ("VE") is many times asked a hypothetical question to help the ALJ determine whether a sufficient number of jobs exist in the national economy that can be performed by a person with a similar RFC to the claimant. A hypothetical question is properly formulated if it incorporates impairments "supported by substantial evidence in the record and accepted as true by the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (citing *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). "[A] vocational expert's responses to hypothetical questions posed by an ALJ constitutes substantial evidence only where such questions precisely set forth all of the claimant's physical and mental impairments." *Wagoner v. Bowen*, 646 F. Supp. 1258, 1264 (W.D. Mo. 1986) (citing *McMillian v. Schweiker*, 697 F.2d 215, 221 (8th Cir.1983)). Courts apply a harmless error analysis during judicial review of administrative decisions that is in part based on hypothetical questions. For judicial review of the denial of Social Security benefits, an error is harmless when the outcome of the case would be unchanged even if the error had not occurred. *See Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003). Because a VE's testimony may be considered substantial evidence "only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a

claimant's deficiencies," *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997) (*citing Porch v. Chater*, 115 F.3d 567, 572-73 (8th Cir. 1997), *and Pickney v. Chater*, 96 F.3d 294, 297 (8th Cir. 1996)), the court finds that the VE's testimony was not substantial evidence.

In the present case, the ALJ did not properly formulate the hypothetical questions posed to the vocational expert. A hypothetical question must incorporate credible impairments supported by the evidence in the record. The ALJ failed to mention several of plaintiff's ailments when giving the hypothetical questions. First, the ALJ failed to include asthmatic bronchitis as an impairment in the hypothetical. Additionally, the ALJ stated in the hypothetical that the individual must avoid pulmonary irritants. Filing No. 14, Tr. at 359. The Vocational Expert stated that he only considers the OSHA rules of fresh, clean and healthy air, and the ALJ stated "okay." *Id.* However, this does not accurately portray the limitations on pulmonary irritants that the plaintiff has. Plaintiff must avoid not only air which is not clean or healthy, but she must also avoid air which contains perfumes and flowers. Further, the ALJ failed to include appropriate limitations regarding the use of plaintiff's hands and arms, and reaching, handling or fingering, including all of plaintiff's adverse reactions to the IVIG infusion. Due to the failure of the hypothetical question to set forth all the significant impairments of the plaintiff, the questions do not constitute substantial evidence. The ALJ erred in relying on improper hypotheticals when examining the vocational expert.

Despite the improper hypothetical question, the vocational expert still testified that there was no other work in the national economy which the plaintiff could do when questioned by the plaintiff. In fact, under the questioning of plaintiff's attorneys, in which he elaborated the hypothetical to include the credible limitations of the plaintiff, the

vocational expert said there was no work for the plaintiff and he would close the world of work for the plaintiff. *Id.* at 362.

The court finds that the record presented to the ALJ contains substantial evidence supporting a finding of disability. Accordingly, the court may reverse the case for entry of an order granting benefits to the claimant. *Parsons v. Heckler,* 739 F.2d 1334, 1341 (8th Cir. 1984). "Where the record overwhelmingly supports a disability finding and remand would merely delay the receipt of benefits to which plaintiff is entitled, reversal is appropriate." *Thompson v. Sullivan,* 957 F.2d 611, 614 (8th Cir. 1992). In this case, the substantial evidence supporting a finding of disability is overwhelming. Under the circumstances, further hearings would merely delay benefits; accordingly, an order granting benefits is appropriate.[1]  *Id.*

THEREFORE, IT IS ORDERED that the ALJ's determination that plaintiff is not disabled is reversed. The court orders this case remanded for a determination of benefits. A separate judgment will be entered in accordance with this Memorandum and Order.

Dated this 26th day of March, 2012.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Court Judge

---

[1] The court notes it took approximately five years for this case to make its way to federal court. Further delay is not merited in this case.